Opinion by
Mr. Justice Moore.
We will refer to plaintiff in error as plaintiff and to defendants in error as defendants, or by name if the reference is to less than all of them.
Plaintiff, a licensed real estate broker, brought the action for the sum of $5,000.00, being the amount of a *512 check given by defendants to plaintiff as a deposit on the purchase price of real estate which had been listed for sale with the plaintiff. Defendants stopped payment on the check under the circumstances hereinafter mentioned.
The St. John’s Lutheran Church owned real estate which it listed for sale with plaintiff. A written offer to purchase the property was made by the defendants on November 11, 1958, and a check for $5,000.00 delivered to plaintiff as “earnest money.” Under the terms of the offer to purchase, defendants proposed to buy the property for $139,463.00, payable $5,000.00 down, $25,000.00 on the date of closing and the balance by assumption of a first deed of trust in the amount of $61,000.00; the sellers taking back a second deed of trust for the remainder. The offer further provided that a general warranty deed should be executed “on or before January 15, 1959,” and that should any of the conditions of the offer not be performed by defendants then any payments made could be kept by plaintiff and his principal as liquidated damages.
Plaintiff asserts that the offer of defendants was accepted by the owners of the property and. that defendants wrongfully refused to perform, and stopped payment on the check.
At the time of the execution by defendants of the offer to purchase the property, the unpaid balance due on the first deed of trust was in fact $61,000.00. The contract further provided for a closing date on or before January 15, 1959. By virtue of the terms of payment on the first deed of trust, which called for a payment on January 10, 1959, the balance of the first deed of trust on the date of closing on January 15, 1959, would only be $51,000.00, otherwise there would be a default on this indebtedness, which was to be assumed by the defendants. As a result of this situation, plaintiff, as the agent of the seller, on December 8, 1958, after the execution of the offer by defendants, contacted the defendants for *513 the purpose of advancing the closing date from January 15, 1959, to a date sometime before January 10, 1959.
The effect of advancing the date of closing to a time prior to January 10, 1959 (on which date a $10,000.00 payment was due on the first deed of trust) would be to impose upon defendants the obligation of making the $10,000 payment, and there would then be a $51,000.00 balance on the indebtedness to be assumed by the purchasers.
Defendants stopped payment on the check December 8, 1958, following the attempt of plaintiff to advance the closing date to a time prior to January 10, 1959. There was testimony that defendants then notified plaintiff that the offer to purchase was withdrawn and that defendants did not want the property. It was not until the evening of December 9, 1958, that the church board took any action on the offer to purchase made by defendants. The meeting of the board at which authority was given to accept defendants’ offer began at 8:03 o’clock P.M. In the afternoon of December 9, 1958, plaintiff presented the $5,000.00 check for certification and was notified that payment had been stopped thereon by defendants; thus the plaintiff, agent of the owners of the property, had knowledge that defendants had withdrawn their offer to purchase before there was any acceptance by the owners of the property. At no time was an acceptance of defendants’ offer over the authorized signature of the property owner submitted to defendants.
The trial court made findings which included the following statements pertinent to the matter under discussion:
“The evidence clearly discloses that the attempt by the plaintiff to change the closing date was before the offer of the defendants was accepted by the plaintiff’s principal.
“In this respect, the church formally approved the offer and directed their appropriate officials to accept it on the evening of December the 9th, 1958.
*514 “The offer of plaintiff was made to and rejected, by the defendants during the day of December the 8th, 1958.
“It is also clear that the terms of the first deed of trust was a subject of concern to the parties and a material condition of the proposed purchase, and so acknowledged by the parties hereto.
“The proposal by the plaintiff to the defendants to compromise or change the closing date was inextricably related to and interwoven with the first deed of trust, which formed a basic and material condition of the purchase of the property by the defendants.
“Under these facts, the Court can reach only one conclusion, and that is the attempt by the plaintiff to change the closing date by advancing it, together with the implications and consequences such act would have in relation to the first deed of trust, amounted to a counter-proposal, which was not only rejected by the defendants, but also resulted in the defendants’ withdrawing the original offer at a time when the original offer had not yet been accepted by the plaintiff’s principal.
“While the evidence indicates that the church did not have knowledge of the December 8, 1958, withdrawal of the offer at the time it — the church — went through the motions of accepting the offer on December the 9th, 1958, the plaintiff cannot defeat the withdrawal of the offer on this ground, because he had knowledge of the fact, and his knowledge was imputable to his principal in law if not in fact, and as such the purported acceptance was a nullity.
“The conclusions of the Court are bolstered by the actions of the plaintiff subsequent to December the 8th, 1958, and December the 9th, 1958, when he continued in his endeavors to consummate the sale of the property by attempting to effectuate a compromise through the offices of the banks, not only in relation to the first deed of trust, but also in connection with the proposed sec *515 ond deed of trust, which the defendants were supposed to give as part of the purchase price, all of these actions taking place subsequent to the time both the plaintiff and his principal knew the defendants had stopped payment on the $5,000 earnest money check.
“This evidence indicates the plaintiff and his principal did not quarrel with the defendants’ withdrawal of the original offer, but on the contrary, they acquiesced therein, and only after their attempts to negotiate a new contract had failed did they elect to stand on the purported acceptance of December 9, 1958.”
There is an abundance of competent evidence to support these findings.
The judgment is affirmed.
Mr. Justice Sutton and Mr. Justice Pringle concur.